# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# AIKEN DIVISION

| | | |
|---|---|---|
| Auto-Owners Insurance Company, | ) | Civil Action No.: 1:17-cv-02632-JMC |
| | ) | |
| Plaintiff, | ) | **ORDER AND OPINION** |
| | ) | |
| v. | ) | |
| | ) | |
| David and Kathy Taylor, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

This matter is before the court pursuant to Plaintiff Auto-Owner Insurance Company's Motion for Summary Judgment (ECF No. 15). For the reasons below, the court **GRANTS** Plaintiff's Motion for Summary Judgment (ECF No. 15), **AWARDS** declaratory judgment to Plaintiff, and **DISMISSES** Defendants' counterclaims.

## I. JURISDICTION

Pursuant to 28 U.S.C. § 1332(a), "district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000 . . . and is between [] citizens of different States . . . ." Moreover, "[a] case falls within the federal district court's 'original' diversity 'jurisdiction' only if diversity of citizenship among the parties is complete, *i.e.*, only if there is no plaintiff and no defendant who are citizens of the same State." *Wis. Dep't of Corrs. v. Schacht*, 524 U.S. 381, 388 (1998) (citing *Carden v. Arkoma Assocs.*, 494 U.S. 185, 187 (1990); *Strawbridge v. Curtiss*, 3 Cranch 267, 2 L.Ed. 435 (1806)). Furthermore, "[a] corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business."[1] 28 U.S.C. §

---

[1] Section 1332(c) contains a different rule for direct actions against an insurer. *See* 28 U.S.C. § 1332(c)(1). However, this is not a direct action against an insurer and that rule does not apply.

1332(c)(1).

Plaintiff admits it is a corporation incorporated in Michigan with its primary place of business in Michigan. (ECF No. 1 at 1 ¶ 1.) Defendants are citizens and residents of South Carolina. (*Id*. at ¶ 2; ECF No. 10 at 1 ¶ 2.) Plaintiff seeks a declaratory judgment regarding its liability to Defendants under a policy providing $116,500.00 in coverage. (ECF No. 1 at 5.) The parties are citizens of different states, and the amount in controversy is greater than $75,000.00, exclusive of interest and costs. Therefore, the court has jurisdiction pursuant to 28 U.S.C. § 1332(a).

Plaintiff seeks a declaratory judgment under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201. (ECF No. 1 at 5.) Pursuant to 28 U.S.C. § 2201(a), "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights . . . of any interested party seeking such declaration, whether or not further relief is or could be sought." The parties contest whether an insurance policy provides coverage for damage to a home sustained in a 2016 fire (*See* ECF No. 1; ECF No. 10), and such a contest is a justiciable controversy, *see e.g.*, *Miles v. Nationwide Mut. Fire Ins. Co.*, No. 8:13-2445-TMC, 2014 WL 12609859, at *1-3 (D.S.C. June 23, 2014) (adjudicating whether an insurance company was liable to an insured under the terms of a policy). Therefore, the court has the authority to adjudicate this matter.

---

*See*, *e.g.*, *Camelback Props. v. Phoenix Ins. Co.*, No. 10 C 01467, 2010 WL 2402929, at *2-*3 (N.D. Ill. June 15, 2010) ("'A suit by an insured against his or her own insurer is denominated a first-party action. The direct-action rule of Section 1332(c) does not apply to a first party action, whether the action is based on denial of coverage or bad-faith insurance practices.' . . . Plaintiffs argue that this is a direct action by the insured against the insurer, and that under these circumstances, the insurer is deemed a citizen of the state of the insured under section 1332(c). . . . Plaintiffs are wrong. Plaintiffs' action is one by an insured against its insurer. It is a contract dispute. It is not a direct action, as that term is used by section 1332(c). The proviso of section 1332(c) does not apply.") (quoting 15 *Moore's Federal Practice* ¶ 102.58[4] (3d ed. 2009) (citations omitted)).

## II. FACTUAL AND PROCEDURAL HISTORY

Plaintiff issued Defendants an insurance policy, Policy Number 43-372-281-00 ("the Policy"), covering their house from April 5, 2016 to April 5, 2017. (ECF No. 37-1 at 3.)[2] The Policy provided $116,500.00 in coverage for damage to Defendants' home (*Id.*) but excluded coverage for "loss to covered property caused directly or indirectly by any of the following, whether or not any other cause or event contributes concurrently or in any sequence to the loss . . . an action by or at the direction of any insured committed with the intent to cause a loss" ("the Intentional Act Exclusion"). (*Id.* at 26.) The Policy's definition of "[i]nsured" includes "your relatives" (*Id.* at 17), and according to the Policy, "[r]elative means a person who resides with you and who is related to you by blood . . . ." (*Id.* at 19).

On August 23, 2016, Jeffrey Taylor ("Jeffrey") set Defendants' house on fire. (ECF No. 1 at ¶ 6.) Jeffrey was indicted for second degree arson in state court (ECF No. 15-3) and pleaded guilty but mentally ill to that offense (ECF No. 15-4). Jeffrey is Defendants' adult son and lived with Defendants at the time of the fire. (ECF No. 10 at ¶ 6.)[3] Defendants filed an insurance claim with Plaintiff. (ECF No. 10 at ¶ 30.) Plaintiff asserted that Jeffrey was an insured under the Policy and his actions qualified as an intentional act, and thus, the Intentional Act Exclusion applied. (ECF No. 1 at 3 ¶ 10.) Because of the Intentional Act Exclusion, Plaintiff claimed it was not liable to Defendants for damages sustained during the fire (*Id.*) and refused to pay the insurance claim (*Id.* at ¶ 31).

Plaintiff filed this action seeking a declaratory judgment that it is not liable to Defendants.

---

[2] Plaintiff attached an uncertified copy of the Policy to its Complaint (*See* ECF No. 1-1); however, the court granted Plaintiff leave to file a certified copy with the court, which Plaintiff has done (*see* ECF No. 37-1).
[3] Both parties agree that Jeffrey is an insured under the Policy. *See* Plaintiff's Complaint (ECF No. 1 at 2-3 ¶ 10). Defendants made this admission at the July 9, 2018, hearing.

(ECF No. 1.) Defendants answered by denying Plaintiff's assertion and counterclaiming for damages stemming from various bad faith actions by Plaintiff and Plaintiff's alleged breach of contract accompanied by a fraudulent act. (ECF No. 10.) After replying to the counterclaims (ECF No. 13), Plaintiff moved for summary judgment (ECF No. 15). Defendants responded in opposition (ECF No. 23), and Plaintiff replied (ECF No. 24). On July 9, 2018, the court heard arguments regarding Plaintiff's Motion for Summary Judgment. (ECF No. 36.)

### III. LEGAL STANDARD

Summary judgment is appropriate when the materials in the record show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[I]n ruling on a motion for summary judgment, 'the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.'" *Tolan v. Cotton*, 134 S. Ct. 1861, 1863 (2014) (per curiam) (brackets omitted) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and a fact is material if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248.

The party seeking summary judgment bears the initial burden of demonstrating that there is no genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this demonstration, the nonmoving party must demonstrate that specific, material facts exist which give rise to a genuine issue. *See id.* at 324. In other words, the nonmovant may not rest on the allegations averred in its pleadings. *See id.*

### IV. ANALYSIS

Plaintiff contends that there is not a genuine dispute as to whether Jeffrey acted with an intent to cause loss, and thus, it is not liable to Defendants as a matter of law. (ECF No. 15.)

4

Plaintiff argues that Jeffrey's plea of guilty but mentally ill establishes his intent to cause loss (*Id.* at 8-12). However, Plaintiff also maintains that the record establishes Jeffrey's intent to cause loss regardless of his plea (ECF No. 24 at 7-9). In response, Defendants assert the Intentional Act Exclusion's language creates a genuine dispute as to a material fact because it is ambiguous; Defendants should not be barred from recovering because they are innocent co-insureds; Jeffrey's plea does not conclusively establish his intent to cause loss in this case; and Jeffrey's actions do not demonstrate an intent to cause loss. (ECF No. 23.)

**1. The Ambiguity of the Policy's Intentional Action Exclusion**

Defendants argue that "[t]he phrase 'intent to cause loss' is subject to multiple interpretations and therefore ambiguous," and that ambiguity creates a genuine issue as to a material fact. (ECF No. 23 at 1-2.) A contract is ambiguous when it is reasonably susceptible to more than one interpretation.[4] *Hawkins v. Greenwood Dev. Corp.*, 493 S.E.2d 875, 878 (S.C. Ct. App. 1997). In *S.C. Farm Bureau Mut. Ins. Co. v. Kelly*, the South Carolina Supreme Court held that the following language was unambiguous: "[W]e do not insure for loss caused directly or indirectly . . . out of any act committed by any insured with the intent to cause a loss." 547 S.E.2d 871, 876 (S.C. 2001); *see also Auto-Owners Ins. Co. v. Hamin*, 629 S.E.2d 683, 685-86 (S.C. 2006) (finding no ambiguity in similar language addressing "intent to cause a loss"). The Intentional Act Exclusion does not differ materially from the language in *Kelly* or *Hamin*. Therefore, the court finds that the relevant Policy language is not ambiguous and does not create a genuine dispute as to a material fact.

---

[4] Generally, the court applies South Carolina law when a contract dispute is brought pursuant to the court's diversity jurisdiction. *See Episcopal Church in S.C. v. Church Ins. Co. of Vt.*, 993 F. Supp. 2d 581, 586 (D.S.C. 2014) ("Because this action falls under the diversity jurisdiction granted to the federal courts by 28 U.S.C. § 1332, the [c]ourt looks to the law of South Carolina to determine the standards by which to evaluate the contract." (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938))).

## 2. Defendants' Status as Innocent Co-Insureds

Defendants argue that they are innocent co-insureds and should be able to recover under *McCracken v. Gov't Emps. Ins. Co.*, 325 S.E.2d 62 (S.C. 1985). (ECF No. 23 at 2.) In *McCracken*, the South Carolina Supreme Court held that "in the absence of any statute or specific policy language denying coverage to a co-insured for the arson of another co-insured, the innocent co-insured shall be entitled to recover his or her share of the insurance proceeds." 325 S.E.2d at 64. In *Hamin*, the South Carolina Supreme Court held that language in a policy preventing coverage for any loss "caused directly or indirectly by . . . an action by or at the direction of any insured committed with the intent to cause a loss" prevented an innocent co-insured from recovering. 629 S.E.2d at 685. The Intentional Act Exclusion excludes "loss to covered property caused directly or indirectly by . . . an action by or at the direction of any insured committed with the intent to cause a loss." (ECF No. 37-1 at 25-26.) The language of the insurance policy in this case is identical to the language in *Hamin*. 629 S.E.2d at 685-86. In *Hamin*, the South Carolina Supreme Court decided that the same insurance policy language at issue was unambiguous and prevented the policyholders from recovering under the policy. *Id.* Thus, the issue is not whether Defendants are innocent co-insureds under the policy but whether Plaintiff can demonstrate Jeffery had an intent to cause a loss. *Id.*

## 3. The Effect of Jeffrey's Plea of Guilty but Mentally Ill in the Present Case

Plaintiff posits that Jeffrey's plea of guilty but mentally ill conclusively establishes his intent to cause loss. (ECF No. 1 at ¶¶10-12.) Jeffrey pleaded guilty but mentally ill to second degree arson. (ECF No. 15-4.) Under South Carolina law, a person is guilty of second degree arson if they "willfully and maliciously cause[] an explosion, set[] fire to, burn[], or cause[] to be burned . . . a dwelling house . . . whether the property of the person or another." S.C. Code Ann. § 16-11-

110(B) (2015). By the inclusion of willful and malicious in the definition, second-degree arson requires intent. *See State v. Leach*, 318 S.E.2d 267, 268 (S.C. 1984). "A defendant is guilty but mentally ill if, at the time of the commission of the act constituting the offense, he had the capacity to distinguish right from wrong or to recognize his act as being wrong . . . but because of mental disease or defect he lacked sufficient capacity to conform his conduct to the requirements of the law." S.C. Code Ann. § 17-24-20(A). Notably, a plea of guilty but mentally ill is an adjudication of guilt and carries the full consequences thereof. *State v. Hornsby*, 484 S.E.2d 869, 872 (S.C. 1997) ("A verdict of [guilty but mentally ill] does not absolve a defendant of guilt. A defendant found [guilty but mentally ill] must be sentenced as provided by law for a defendant found guilty. However, under the [guilty but mentally ill] statute, a defendant found [guilty but mentally ill] is entitled to immediate treatment and evaluation." (citations omitted)). In short, the presence of mental illness serves as a mitigating factor at sentencing, but it does not absolve the defendant of guilt or responsibility. *Id.* at 872.

In *Doe v. Doe*, the South Carolina Supreme Court, under a theory of collateral estoppel, adopted the rule that "once a person has been criminally convicted he is bound by that adjudication in a subsequent civil proceeding based on the same facts . . . ." 551 S.E.2d 257, 258 (S.C. 2001). In *Zurcher v. Bilton*, the South Carolina Supreme Court extended the preclusive effect of convictions to guilty pleas.[5] 666 S.E.2d 224, 226 (S.C. 2008). Collateral estoppel does not require

---

[5] In *Zurcher*, the defendant entered an *Alford* plea, and the court analyzed it as if it were a normal guilty plea. *See* 666 S.E.2d at 226. South Carolina courts have not expanded *Zurcher* and *Doe* to pleas of guilty but mentally ill, but the logic of *Zurcher* suggests that the rule would also apply to pleas of guilty but mentally ill. *See id.* ("For this reason, so long as a defendant has entered a guilty plea freely and voluntarily, an admission of guilt fully and fairly litigates the matter in the same manner as a contested trial in which a defendant is adjudicated guilty."). In their Response to Plaintiff's Motion for Summary Judgment (ECF No. 23), Defendants suggest that the novelty of this issue creates grounds for a certified question to the South Carolina Supreme Court. (ECF No. 23 at 10-11.) However, because the court finds that Jeffrey's plea does not have a preclusive effect

7

identical parties, *see S.C. Prop. & Cas. Ins. Guar. Assoc. v. Wal-Mart Stores, Inc.*, 403 S.E.2d 625, 627 (S.C. 1991), but a party must have had the opportunity to litigate the facts involved in order to be collaterally estopped from challenging them. *Zurcher*, 666 S.E.2d at 226 ("[Collateral estoppel] may not be invoked unless the precluded party has had a full and fair opportunity to litigate the issue in the first action." (citing *S.C. Prop. & Cas. Ins. Gaur. Assoc.*, 403 S.E.2d at 627)).[6] Jeffrey pleaded guilty, not Defendants. As such, Defendants did not have any opportunity to fully and fairly litigate the facts at issue in Jeffrey's conviction and are not collaterally estopped from challenging the facts surrounding Jeffrey's plea.

**4. Jeffrey's Intent to Cause Loss**

Jeffrey's plea does not conclusively establish that he acted with an intent to cause loss, so the court must consider whether the record, when taken in the light most favorable to the Defendants, establishes that Jeffrey acted with an intent to cause loss. In *Miller v. Fidelity-Phoenix Ins. Co.*, 231 S.E.2d 701 (S.C. 1977), the South Carolina Supreme Court considered what is necessary for an individual to act with intent to cause loss. The court created a two-part test for whether loss caused by an insured individual was intentional. 231 S.E.2d at 702. In order to be intentional, "the insured must be shown not only to have intentionally acted in setting the fire but must also have intended that the fire cause the type of loss or injury which resulted." *Id*.

An insurance policy can be written to exclude the application of *Miller*. *See*, *e.g.*, *S.C. Farm Bureau Mut. Ins. Co. v. Dawsey*, 638 S.E.2d 103, 104-05 (S.C. Ct. App. 2006); *see also Miles*, 2014 WL 12609859, at *3. Thus, before determining whether Jeffrey fulfilled the *Miller* requirements, the court must determine if *Miller* applies to the Policy. In *Miles* and *Dawsey*, the

---

on Defendants, certifying a question to the South Carolina Supreme Court is unnecessary for the resolution of this case.

[6] Plaintiff has not cited to, and the court is not aware of, any cases modifying this rule for arson committed by a co-insured, relative, or other similar party.

8

policies in question were written such that the *Miller* test was not applicable. In *Dawsey*, the policy excluded injuries "resulting from intentional acts or directions of you or any insured. The expected or unexpected results or (sic) these acts or directions are not covered." *Dawsey*, 638 S.E.2d at 104. The policy in *Miles* provided:

> We do not cover loss to any property resulting directly or indirectly from any of the following. . . . Intentional Acts, meaning loss resulting from an act committed by or at the direction of an insured that may reasonably be expected to result from such acts, or is the intended result from such acts. Intentional acts include criminal acts. Such acts exclude coverage for all insureds.

*Miles*, 2014 WL 12069859, at *1. Because the policies addressed both intended and unintended, or unexpected, results, courts held that they did not require intentionality and did not implicate the *Miller* test. *Id.* at *3; *Dawsey*, 638 S.E.2d at 105.

The Intentional Act Exclusion in the Policy addresses "loss to covered property caused *directly or indirectly* by any of the following, whether or not any other cause or event contributes concurrently or in any sequence to the loss . . . an action by or at the direction of any insured committed with the intent to cause a loss." (ECF No. 37-1 at 25-26) (emphasis added). The language of the Intentional Act Exclusion is substantially similar to the policies in *Miles* and *Dawsey* in that it excludes coverage for losses occurring both directly and indirectly from the intentional act of an insured. Therefore, the court finds that an action by an insured does not have to fulfill the requirements of *Miller* to fall into the Intentional Act Exclusion of the Policy.

Because the Intentional Act Exclusion is not ambiguous, when interpreting the term "intent to cause loss," the court looks to the plain and ordinary meaning of the words. *Nationwide Mut. Ins. Co. v. Commercial Bank*, 479 S.E.2d 524, 526 (S.C. Ct. App. 1996). As a result, Jeffrey must simply have intended to set the fire, regardless of whether he intended the house to burn down. Neither party contests that Jeffrey intended to set the fire. (ECF No. 1 at ¶ 8; ECF No. 10 at ¶ 7;

9

ECF No. 23 at 6-7.) Therefore, his actions fall into the Intentional Act Exclusion, and Plaintiff is not liable.

Moreover, even if *Miller* were applicable to this case, Jeffrey intended the fire and intended to cause the kind of loss that resulted. In arguing that Jeffrey lacked intent, Defendants submitted a mental examination of Jeffrey which details his history of mental illness. (ECF No. 23-2.) In the examination, Jeffrey explains that he started the fire in order to escape from the voices he was hearing and the threat he believed they posed to him. (ECF No. 23-2 at 9-10.) Jeffrey's awareness that the house would burn down stands in contrast to the arsonist in *Miller*. In *Miller*, a child set a house on fire because he wanted to see the fire trucks come. 231 S.E.2d at 702. The court reasoned that the child had no awareness that the house would burn down in the process, so the child did not intend to cause the loss. *Id.* Jeffrey was delusional, but he was aware that the house would burn down. (ECF No. 23-2 at 9.) Thus, Jeffrey had the requisite intent to cause loss.

Accordingly, the court finds that there is not a genuine dispute of material fact, and Plaintiff is entitled to summary judgment as a matter of law on its declaratory judgment action because the Intentional Act Exclusion applies to Jeffrey's actions. As a result, Plaintiff is not liable to Defendants.

**5. Defendants' Counterclaims**

Defendants counterclaimed for various bad faith actions by Auto-Owners. (ECF No. 10 at ¶¶ 26-63.) Defendants allege: bad faith – breach of contract; bad faith – statutory liability for attorneys' fees; and bad faith – negligence. (ECF No. 10 at ¶¶ 40-59.) Under South Carolina law:

> The elements of a cause of action for bad faith refusal to pay first party benefits under a contract of insurance are: (1) the existence of a mutually binding contract of insurance between the plaintiff and the defendant; (2) refusal by the insurer to pay benefits due under the contract; (3) resulting from the insurer's bad faith or unreasonable action in breach of an implied covenant of good faith and fair dealing arising on the contract; (4) causing damage to the insured.

*Crossley v. State Farm Mut. Auto Ins. Co.*, 415 S.E.2d 393, 396 (S.C. 1992). "If there is a reasonable basis for contesting a claim, there is no bad faith." *Id.* at 397. Additionally, Defendants counterclaimed for breach of contract accompanied by a fraudulent act. (ECF No. 23 at ¶¶ 60-63.) Breach of contract accompanied by a fraudulent act requires "(1) a breach of contract; (2) fraudulent intent relating to the breaching of the contract and not merely to its making; and (3) a fraudulent act accompanying the breach." *Conner v. City of Forest Acres*, 560 S.E.2d 606, 612 (S.C. 2002) (citing *Harper v. Ethridge*, 348 S.E.2d 374, 378 (S.C. Ct. App. 1986)).

As explained above, Plaintiff was not obligated to pay Defendants under the Policy. Because Plaintiff is not liable to Defendants, Defendants cannot prove a refusal by the insurer to pay benefits due under an insurance contract or a breach of contract. These elements are necessary for a claim of bad faith or breach of contract accompanied by a fraudulent act. *Id.* Because Defendants cannot prove the elements of these claims, Plaintiff is entitled to judgment as a matter of law.

## V. CONCLUSION

Construing the relevant facts in the light most favorable to Defendants, Plaintiff is not liable to Defendants for damage sustained in the 2016 fire because Jeffrey's actions satisfy the Policy's Intentional Act Exclusion. Therefore, the court **GRANTS** Plaintiff's Motion for Summary Judgment (ECF No. 15), **AWARDS** declaratory judgment to Plaintiff, and **DISMISSES** Defendants' counterclaims.

**IT IS SO ORDERED.**

*J. Michelle Childs*
United States District Judge

August 24, 2018
Columbia, South Carolina